Good morning, Your Honors, and may it please the Court. Mr. Alas was found in the United States on April 4, 2016, and so his indictment in May of 2021 was outside of the five-year statute of limitations, and the indictment should have been dismissed. The issue here is whether the encounter that happened in April 2016, in which Mr. Alas was interviewed by Deputy Landa Verde of the Harris County Sheriff's Office, was enough to constitute being found in the United States for purposes of 1326. The outer boundaries of this issue are set pretty clearly in the case law. On the one hand, where an officer who actually has immigration authority, whether a direct federal employee or one who is designated personally and individually under 287G, when an officer like that gains subjective knowledge, the alien is found. On the other hand, when purely state officers who have no authority or no connection to federal enforcement gain awareness, the person is not found. That's Uribe Rios. This case is right sort of in between because Officer or Deputy Landa Verde was designated or certified under Section 282, 287G? No, Your Honor. Well, at least the record doesn't reflect that he was. They did a record search and an affidavit. We're not arguing that he was. Then why should the knowledge that he acquired if he is not designated under 287G? Why should that qualify as having been found? Because of the 287G agreement was between ICE, the Delegated Authority from the Secretary of Homeland Security. It was between ICE and the entire Harris County Sheriff's Office. The designation of individual officers was only part of the memorandum of agreement. So the rest of the memorandum of agreement is record-sharing. But, Counsel, the difficulty is that the memorandum of agreement between ICE and the Harris County Office, you can't read that to overturn the text of the statute. The text of the statute says only, this is the federal statute, only officers determined by the Attorney General to be qualified may carry out the enforcement function. There are two points, I think, to be made about that. Enforcement of federal immigration law, it's not a place for amateurs. The Supreme Court has said that qualified means knowledgeable about federal law and knowledgeability means certification. And I don't think any agreement between ICE and the Harris County Sheriff's Office can overcome that. And it seemed to me the other difficulty you face is that under your view, if any information had come to a clerical employee or a paid intern or medical personnel about your client's status, that that would have qualified as a fine and set the statute of limitations in motion. And not necessarily. What does that do to the prior emphasis in our opinion in Santos and in the Supreme Court's opinions that says someone has to be qualified and certified. And these particular deputies were not. Your Honor, that relates only to immigration arrest authority. So the concern here, number one, is that a person or an individual conducting an immigration arrest, a civil arrest, not a criminal arrest, is going to expose ICE or somehow to civil liability. And there's an extensive part of the memorandum of agreement relates to the liability of the officers. And that's why they want to keep tight control. The second reason they keep tight control is because it's federal policy that governs immigration. The state can't contradict that or interfere with it, as the Supreme Court described in Arizona versus United States. But that's not the issue here. The issue, Mr. Alas wasn't even arrested back in 2016. He wasn't suspected of a crime at that point. He was the victim of a crime. So the question is not whether a person has in Santos and in Arizona versus United States, that all regarded arrest authority. When a person is found doesn't mean when they're arrested. It's when knowledge is gained. So the real relevant provisions of the memorandum of agreement are the intelligence. What do you do with the language in the agreement between ICE and the sheriff's department? You've got to overcome both the language of the agreement and the language of the statute. The agreement is pursuant to the statute. And it says ICE will delegate code nominated, trained, certified, and authorized personnel to perform enforcement functions. And the deputies were not nominated, trained, certified, and authorized to perform these functions. And what troubles me about your position is that if you overturn this requirement of certification, we're going to have a vast number of personnel of all kinds and descriptions in the Harris County Sheriff's Office who come upon information about somebody's status, either through triple hearsay or directly or whatever. Who knows if it's true or who knows if it's fault. And we're going to be litigating. We're going to be litigating hundreds of cases, if not thousands of cases across the country as to what qualifies as a find. And the agreement and the statute and the Supreme Court's case law and our case law all indicate that a find is tied to education and certification. And once you leave that rule, you're in Never Never Land. And it's the most litigious proposition that I've heard. And a lot of people are going to be said to have been found that it may be perfectly innocent and perfectly lawful. It's when you let amateurs loose on this whole area in contravention of what Congress says and the case law says in the agreement says you are asking for a chaotic situation. We are not orderly right now, but you're asking for you are asking for chaos enforcement of immigration law. And respond. So, um, no. And a reversal in this case would have no effect whatsoever on what officers are allowed to conduct civil immigration arrests and their liability under state law. It has nothing to do with that. And in fact, um, the liability or the, the, uh, the authority to actually conduct immigration arrests to go out in the community and arrest people would continue to be supervised by ICE. Number one, this arises only because there was an encounter with an officer who was part of an office that had a 287 G agreement, and he didn't use an alias. He gave his true name and date of birth. And in fact, the information he provided was that his employer was threatening all of the illegally present employees, um, with being reported to ice. If they reported his counsel, the problem, the, the agreement to which you refer under section two 87 uses the words ice will delegate that nominated trained, certify and authorized personnel. And the agreement went beyond just the statute. The statute, the 287 G does not describe the entire terms of every contract that's going to be signed between ice and between a sheriff's organization. So here are the parts that are relevant that are put in, um, they provide material support and office space free of charge to ice, which indicates they're being integrated together. And especially important is page 284 of the joint appendix, the data sharing provisions. It says H C O H C S O that's the Harris County Sheriff's office, not individual officers, but the office will provide specific tracking data and, or any information documents or evidence related to the circumstances of a particular arrest upon request. And later it says H C S O again, this is the organization, not individual officers certified agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. So that made deputy led the Verde that made his report immediately available to ice under the terms of the agreement that agreement made H C S O into the ears and eyes of ice. And when a person who is, there's no, this isn't involving an administrative assistant or a paralegal. What about that? What about those examples? No, those examples, your honor, I think would fall under agency. So if an administrative assistant finds out that doesn't necessarily impute the information to the entire organization, what we have here is deputy land of area. He is certified not under the 287, but he is a deputy sheriff. So he exercises the powers of the sheriff and he writes a written report that goes into a database. So both the report and he himself are part of the knowledge of H C S O. Whether that knowledge opens, this opens the whole door. If we buy your theory, they're going to be hundreds of thousands of people. We were all failed. We were all found this in that piece of information came to this in that individual. And Oh, by the way, they are officially employees of the Harris County Police Department, because your view of the party to the agreement would include everybody to the hair and the Harris County Police Department. And you're going to have people all over the country in every city in this country, in this jurisdiction, in this country. We were found more than five years ago. We're an area legal status was brought to the attention of this personal, that person, and you're going to, we're going to have to litigate those factually and say, well, I mean, what information was brought and, you know, and to whom was this brought? And this is over five years ago. Where is the person to whom the information was brought? Um, it is a prescription for total chaos. Your honor, I litigated, uh, 1326 is as my majority caseload for seven years in the Southern district of California. And I would be absolutely shocked if this same issue that a person encounters, uh, an officer from a two 87 G agreement more than five years before the date of the indictment. Um, I would be shocked at it for, if it arises more than once every couple of years, there aren't hundreds of thousands of 1326 prosecutions. Um, even in the last, we can't rewrite the agreement, the agreement described it with the entire Harris County police department. And because you say that they're a signatory to the agreement, that that includes everybody, including a paid intern or including a clerical personnel. They're going to be, they're all to the agreement. You have described it. It includes anybody who under ordinary laws of agency, agency law incorporate, which are common to corporate law. Um, anybody whose knowledge would be imputed to the organization. Otherwise under just that, that in itself, ordinary laws of agency, that in itself is a litigious phrase. The Supreme court and our precedent in Santos and Arriba Rios have tried to set forth a clear cut rule that would avoid all the questions your position raises. The core of the clear cut rule is a certification requirement. And the certification requirement, is earned by attendance at a particular in immigration and enforcement. And you're going to draw all these kinds of things into question. I just can't imagine how chaotic, um, the implications of your view. It draws, uh, nothing into question as far as the immigration enforcement activities happen. The only time this arises is when it comes into court and the government indicts on a 1326. I see my time. Thank you. Mr. Atlias. Good morning. For the defendant to secure dismissal of his indictment on timeliness grounds needs to be approved on April 26th. Can you speak up a little bit for me? And he can't do that for the following reasons. The first is that the defendant's stipulations contradict any kind of actual discovery theory. Judge Wilkerson, was that a question? Yeah, no, go ahead. I can hear you fine now. The defendant's stipulations contradict any actual discovery theory that he makes. We know from this court's decision in Uribe Rios, an alien is found under 1326 when federal immigration authorities discover his presence in the country. But here, the defendant was found by Deputy Orlando Baird in April 26, found using that word colloquially, um, in April 2016. But Deputy Orlando Baird was an ordinary Harris County Sheriff's officer. So he wasn't a federal officer and the defendant stipulated to that effect. So much like Uribe Rios, the defendant can't show that in April 2016, federal government had any knowledge of his presence in the country, let alone the status. And also like Uribe Rios, that decision forecloses any attempt to impute Deputy Orlando Baird's knowledge to unspecified people in ICE. I think a straightforward application of Uribe Rios really resolves this case. But of course, there's a secondary theory, which is a theory that even though Deputy Orlando Baird wasn't himself designated under 287, his office is part of that agreement. So he was in effect found by that office, even though Orlando Baird wasn't designated. This case has all kinds of problems because there's a collateral attack being level against a removal order, a removal order in 2011. And collateral attacks on removal orders are highly disfavored. And you have to meet all three of the criteria. And it's doubtful that any of the three criteria have been met to sustain a collateral attack. And our recent decision in the United States, the manly has indicated that malicious wounding is not a crime of violence after Borden. And indeed, our circuit has always, in 2011, followed Borden in saying that recklessness is not a men's right. Sometimes in these cases, you have to step back just a second, and you have somebody who came into the country illegally. He was convicted of an aggravated felony, which was malicious wounding. That was a crime of violence. He then waived his right to contest the charges. He was removed to El Salvador. He reentered the country illegally. And you have to ask yourself, reading all these statutes and everything, is this the kind of individual that our country, which is welcoming to immigrants and wants and finds renewal and is this the kind of individual that Congress would want? And when you look back over this whole record and the rest, you have to answer that question in the negative. Isn't that correct? I agree, Judge Wilkinson. You referenced this court's decision in manly. We thought that the malicious wounding issue was resolved even before manly based on Moreno, Osario, and Romley. But this court's decision in manly definitely forecloses the defendant's challenge. We filed a 28-J letter on manly in, I think, November. The defense counsel hasn't responded to it. I'll make his own arguments. But in our view, that resolves the entire collateral attack because, as you pointed out, you have to meet all three of them. Can't meet D3, then the entire challenge fails. And so returning for a moment to the statute of limitations challenge, we went through our brief, all the reasons why we think the defendant's theory, secondaries for the backup theory, fails. And Judge Wilkinson, you pointed this out in the text of the statute, first and foremost, forecloses the defendant's challenge. It's very clear that the statute contemplates a and unsurprisingly for a program like this, there's a training requirement, there's a certification requirement, there's a requirement that the officers have knowledge of and comport with governing law. And the memorandum is to a similar effect. It's full of terms and conditions regarding the nomination and certification and training of specified officers. And there's nothing about the statute or the memorandum that suggests that once office enters into one of these agreements, well, everybody is sort of swept up within it and has either immigration power or responsibility. On the topic of the memorandum of agreement, I would like to address something that defense counsel raised here today and also in his reply brief, which is a theory that there's this cooperation agreement for knowledge sharing. And the reference that the defendant makes, he cites JA 285 to 286. And I think that defense counsel has just misread that provision. And again, it's 285 to 286. The provision the defendant cites about cooperation and information sharing is in a section of the NOA called liability and responsibility. And it addresses, as it says in the first few lines, what happens when a participating officer is subject to a complaint that could turn into a criminal case or a civil lawsuit. And so the entire page addresses what happens in that circumstances. It first addresses federal court act claims, then addresses how a participating officer can get DOJ civil division to represent him. And then comes a line the defendant referenced, which is that the Harris County Sheriff's Office agrees to cooperate with any federal investigation and share information. That has to do with when a Harris County Sheriff's Officer who participates in the program is himself subject to an investigation. I don't think it means what the defendant thinks it means, which is that there's this knowledge sharing to enforce immigration. That's not what it means. That's why the last line of that paragraph cites Garrity, which is a case about internal investigations. And so I just, with respect, I think the defense counsel has just misread that provision. And again, Judge Wilkinson, you referenced this earlier. One of the big practical problems with the defendant's theory, and it doesn't just apply to the Harris County Sheriff's Office that has a 13-287 agreement, and there are about 130 of them, which is presumably many, many tens of thousands, if not hundreds of thousands of employees. You could just take the Harris County Sheriff's Office. On the defendant's theory, all of those people, whether they know it or not, have the power, not just the thought, because we have to remember what we're talking about. We're talking about triggering a statute of limitations at the end of the day. All these people have the power to find aliens and trigger a statute of limitations, whether anybody in the federal government knows it, whether they even know. Well, this case comes to us with a prescription for chaos, and the chaos has a capital C. I just can't imagine the number of finding problems that would be unleashed with this. I mean, it's chaotic. And just to let amateurs who have no knowledge of enforcement, just to let them loose over the border and turn them into deputized immigration enforcers or finders or whatever, the whole thing makes me recoil a little bit as to what the consequences would be. I agree, Judge Wilkinson. I think it would lead to a really bizarre and unhinged statute of limitations scheme, which at the end of the day, as applied to 1326, is what we're talking about. I'd be happy to answer. I'm going to let my colleagues and my colleagues have questions. I'm going to give them whatever time they need to answer. Otherwise, you may sit down. Judge Diaz, Judge Cogburn, do you have any questions of this gentleman? I do not. I do not. Thank you. Thank you. First thing I have to note, Your Honor, Your Honor asked, is this the kind of individual that this welcome country that Congress would want is not at all a question that is before this court inappropriate even to consider. The legal question is whether the discovery of the true name, date of birth, and immigration status of an individual by a deputy officer of an organization that has agreed in writing to be the eyes and ears of ICE is sufficient to say that that person was found in the United States. That is it. I will briefly mention the collateral attack. We did respond to the 28J. Manley does cover that. Malicious wounding under Manley, which is published, is a crime of violence. That will have to wait for en banc review if this court does not remand on the statute of limitations theory. Going back to the statute of limitations theory, the government mentions in page 284 and 285 of the record, this agreement is key. This is in and responsibility. It says HSCO agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers, including providing all the other information. Then only later is when it talks about HSCO agrees to cooperate with federal personnel conducting reviews to ensure compliance. That is in a separate part later on. The initial part about information sharing is its own separate paragraph. The previous paragraph, page 284, indicates that the HSCO, and this is under the heading reporting requirements, will provide any information, documents, or evidence related to the circumstances of a particular arrest upon request. This would unleash no chaos because it would not affect one iota immigration enforcement. It would have an effect only on the statute of limitations. The found-in date is August of 2020. There is an eight-month lapse between when they say they found him and when they actually got an indictment in this case. Eight months of that delay could have easily been avoided or would have easily put this case within the statute of limitations. Second, the question that the court is asking about the chaos of opening up 287G offices. There are only 130. This is out of all local enforcement organizations in the entire country. Look at what happened in Harris County, Texas. They had this agreement. They renewed it in 2016. Then they let it lapse. They are no longer party to any 287G agreement. That is a political question. If the voters of a particular locality want their law enforcement officers to operate as the ears and eyes of ICE, provide them office space to detain, and that is another then the voters can vote for people that will enact those. The beginning of this agreement, it is even in the record, is the order of commissioners of court. This was adopted and approved by an elected body. This will not unleash any kind of chaos. It leaves the decision about how local law enforcement operates and what sorts of responsibilities they want to take on as relating to immigration. It leaves that up to the voters in every local circumstance. The simple facts here are, and I would be shocked, we do not have any information about when this report was pulled or who saw this report. Nobody from ICE testified from down in Harris County. But I would be absolutely shocked if an officer investigates, interviews a man at the hospital who is bleeding from his eyes, who says that his employer beats him and others regularly, that he threatens to report them to ICE if they complain about it. I would be shocked if an is itself a crime under 1324. This individual was actually arrested for the crime of the assault that he committed on my client. When it involves immigration, and especially these threats to report people to ICE, that is going to trigger ICE involvement if the local law enforcement reports this fact. We do not have a record of when exactly this report was viewed by anybody, but it is completely reasonable to assume that ICE saw it at the time. Now, whether they want to take enforcement action is ICE's decision. Gathering the information and giving it to ICE triggers the founding. Whether ICE acts on it is up to them, and they have lots of enforcement priorities. It's perfectly possible they decided that, well, this man is a victim of a crime, and our real priority is getting his boss, so we do not want to arrest him and subject him to the immigration process right now. We do not have any of this in the record. Not at all, Your Honor. How does that help you? I do not understand. Because it would not trigger chaos. It would leave the decisions, Your Honor, in the hands of the individuals who are supposed to make those decisions. I see my time is up. All right. We thank you. Thank both of you. I will ask the courtroom deputy to adjourn court. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Albert Diaz, Max O. Cogburn Jr.